UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONLAN ABU, a foreign company
d/b/a BIG RED ORCHARD, et al.,

                    Case No.: 20-12805

        Plaintiffs,            Hon. Gershwin A. Drain

v.

JEFF MULHOLLAND,

        Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [#55], DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#56], GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE [#57] AND DENYING PLAINTIFFS' MOTION TO STRIKE AND FOR SANCTIONS [#58]**

## I.   INTRODUCTION

Plaintiffs filed the instant action against Jeff Mulholland alleging he retaliated against their apple orchard business when he accessed the orchard's My Google Business account and altered the orchard's business information to inform the public the apple orchard was "permanently closed" and a "criminal enterprise," changed the contact information for the orchard and locked Plaintiffs out of the My Google Business account.  Plaintiffs bring claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*.; the Stored Communications Act

("SCA"), 18 U.S.C. § 2701 *et seq*.; as well as state law claims of conversion and defamation.

Now before the Court is the Plaintiffs' Motion for Summary Judgment, the Defendant's Motion for Partial Summary Judgment, Defendant's Motion for Leave to File Second Motion for Summary Judgment and Plaintiffs' Motion to Strike and for Sanctions. These matters are fully briefed and a hearing was held on June 22, 2023.  For the reasons that follow, the Court grants in part and denies in part Plaintiffs' Motion for Summary Judgment, denies Defendant's Motion for Summary Judgment, grants Defendant's Motion for Leave and denies Plaintiffs' Motion to Strike and for Sanctions.

## II.    FACTUAL BACKGROUND

Plaintiffs do business under the name Big Red Orchard in Romeo, Michigan. Plaintiffs purchased the property and business today known as the Big Red Orchard in 2019. The Big Red Orchard is operated as a farm, apple orchard and cider mill business.  Defendant Mulholland is a member of a limited liability company that held an ownership interest in the apple orchard prior to the Plaintiffs' purchase of the property and all of the assets comprising the apple orchard's business operations.

Apple Orchard Note Holdings, LLC ("AONH") eventually assumed, and foreclosed on, the mortgage over the real and personal property of the Big Red

Orchard.  On September 4, 2018, Defendant Mulholland was one of the signatories to an agreement which gave the management rights to the Big Red Orchard to Ryan Moore's, the principal of Plaintiffs, entity, BROF, LLC by the "owner of Miller's Big Red Orchard" and AONH which had a "mortgage and security interest on the real and personal property" used at the orchard (the "Management Agreement"). In the Management Agreement, Defendant Mulholland further agreed that:

> [AONH] is the assignee of a certain mortgage and security interest on the real and personal property used at the Location. The mortgage and security interest in the process of foreclosure proceedings, which Owner has consented to releasing any and all rights of redemption in such collateral upon completion of the foreclosure proceedings.

ECF No. 55, PageID.648.  Those rights were given to BROF because Mr. Moore was "willing to assume the duties of managing Miller's until such time as Manager (or an affiliated entity) has *successfully purchased the assets of Miller's from Owner and Creditor*." *Id*. (emphasis added).

In 2013, during the time that Defendant Mulholland held an indirect ownership interest in the Big Red Orchard before it was sold to Plaintiffs, he set up the Google My Business Account for the Big Red Orchard utilizing the alias of "Jason Adams." The Google My Business Account allowed Defendant Mulholland to view and respond to customer reviews of the Big Red Orchard, along with an ability to manage information about the business, answer questions left by

customers, and provided access to confidential insights and metrics compiled by Google about the business's online presence.

As part of Plaintiffs' purchase of the Big Red Orchard on June 19, 2019, as contemplated by the Management Agreement, Plaintiffs received "all right, title and interest in, to and under the licenses, permits, lease agreements, intangible assets, purchase orders and contracts relating to [the Big Red Orchard] and any receivables related to the Business" from AONH which included "all of the Personal Property of the business on the operation of Miller's Big Red Orchard" (the "Assignment"). *See* ECF No. 9-3, PageID.115.

Prior to the Assignment, Defendant Mulholland, individually, assigned and transferred to "Conlan Abu . . . all of his rights title and interest in his 50% membership interests in MILLER'S BIG RED ORCHARD, LLC." *See* ECF No. 55-5, PageID.659.   During this period, Defendant Mulholland was employed by an affiliate of Conlan Abu until, approximately, July 2019, when Defendant Mulholland continued working for Plaintiffs on a voluntary basis. *See* ECF No. 55-2, PageID.615-616.  Defendant Mulholland did not have a "defined role," but worked with Plaintiffs because Mr. Moore "came to Michigan to get involved in a group of restaurants, including the Orchard" and the two "were just dear friends and working on this business plan together." *Id*., PageID.616-617.  However, because Defendant Mulholland and Mr. Moore had a falling out, Defendant

Mulholland stopped working at the orchard and ended his association with Plaintiffs. *Id*., PageID.626-627. This occurred around October 2019. *Id*., PageID.615.

On September 25, 2020, Defendant Mulholland contacted Mr. Moore about an employment verification that was "needed for me to finalize the mortgage and the awful saga of my divorce. . . . It HAS to be signed." ECF No. 55-7, PageID.667. Defendant Mulholland needed this paperwork "to take ownership of our house and remove my wife from the mortgage - - or my ex-wife." ECF No. 55-2, PageID.623-624. However, Defendant Mulholland was no longer employed by Plaintiffs, or their related entities and he "wasn't making any income at that point." *Id*., PageID.624-628. Two days later, Defendant Mulholland sent another e-mail to Mr. Moore stating that "[t]ime is of the essence for me here. I'll bring the paperwork by at some point today if I don't hear back from you." *See* ECF No.55-8, PageID.672. Defendant Mulholland, further, stated "[i]f it's not tomorrow, it will be the next day. And so on and so on. I need to get this done as it's a much bigger picture for myself and my kids than this stupid fight with you." *Id.* Twenty-five minutes later, Defendant Mulholland sent Mr. Moore another e-mail about signing the employment verification. *Id.* Defendant Mulholland later unsuccessfully "stopped by to get paperwork signed regarding my employment

status[,]" but was stopped at the door and asked to leave. ECF No. 55-2, PageID.642.

On October 2, 2020, shortly after Defendant Mulholland's attempts to get the employment verification signed, he accessed the Big Red Orchard's Google My Business account through the login information he retained despite his assignment of all of his ownership interests in the Big Red Orchard to Plaintiffs. Defendant Mulholland changed the information publicly listed for the Big Red Orchard on the Google My Business Account to falsely state that the Big Red Orchard was "Permanently Closed," and was a "Criminal Enterprise." Defendant Mulholland also changed the phone number listed for the Big Red Orchard to a local resident's phone number and removed the hours of operation for the business.

At his deposition, Defendant Mulholland explained that he publicly wrote that the Big Red Orchard was a "criminal enterprise" because "I was talking to a buddy of mine that used to work with him. And at that point in time, I believed that [Moore] was, in fact, owning and operating a criminal enterprise. There was a lot of activity that could be going on over there." *Id*., PageID.631-632. Defendant Mulholland admitted he understood that "the basic premise of Google" was so that "people in the public can do a search and pull up information on a Google listing about a business" and that he "understood this was going to be part of the Google listing for the business." *Id.,* PageID.634-635.

Upon discovering that they were locked out of the Big Red Orchard's Google My Business Account, and that the online listing for the Big Red Orchard had been changed, Plaintiffs attempted to regain control of the Google My Business Account–however, their attempts at regaining control over the Google Account were rejected.  Five days after he changed the listing for the Google My Business Account, Defendant Mulholland finally relinquished his control of the account to Plaintiffs.  Plaintiffs were able to remove the "criminal enterprise" description for the Big Red Orchard, notify the public that it was open, and restore its hours and proper phone number after they regained control over the Google Account.  *See* ECF No. 55-6, PageID.663.  However, by this time, school groups had already stopped visiting the orchard, which experienced a massive drop in sales during a busy time of the year. *Id*.

## III.   LAW & ANALYSIS

### A. Defendant's Motion for Leave to File and Plaintiffs' Motion to Strike and for Sanctions

Plaintiffs move to strike Defendant's Motion for Partial Summary Judgment because Defendant previously moved for partial dismissal under Fed. R. Civ. P. 12(b)(6) and/or for summary judgment pursuant to Fed. R. Civ. P. 56(a).  *See* ECF No. 22.  In denying Defendant's first motion for partial dismissal, the Court declined to analyze Defendant's motion under Rule 56, concluding that Plaintiffs'

claims survived Rule 12(b)(6) scrutiny. *Id*. Because no discovery had been

undertaken, the Court concluded that it would deny the request for Rule 56

dismissal without prejudice. *Id*.

Defendant now moves for leave to file a second Motion for Summary

Judgment. However, because this Court's local rules do not allow a party to file

two summary judgment motions without obtaining leave of court, Plaintiff moves

to strike Defendant's second Motion for Summary Judgment and seeks sanctions

for Defendant's failure to comply with this Court's local rules. *See* E.D. Mich. L.R.

7.1(b)(2).

The Court will grant leave for Defendant to file a second Rule 56 Motion

because the Court has yet to consider whether a material question of fact exists on

Plaintiffs' claims. The parties have completed discovery and this case is now ripe

for Rule 56 review. As such, the Court will deny the Plaintiffs' motion to strike

and for sanctions.

## B. Motions for Summary Judgment

### 1. Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall

be granted if there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's

Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court

must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### 2.   CFAA and SCA

Under the CFAA, "[w]hoever . . . intentionally access a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer . . . shall be punished" and "[a]ny person who suffers damage or loss by reason of a violation" of the CFAA may bring a civil suit "against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(a)(2)(C), 1030(g).  In order to establish a claim under the CFAA, Plaintiffs must demonstrate Defendant Mulholland (1) intentionally, (2) accessed, (3) a protected computer, (4) without authorization, (5) recklessly causing damage and loss, and (6) as a result of Defendant's conduct, Plaintiffs suffered losses in excess of $5,000.00.  *See* 18 U.S.C. § 1030(a)(5)(C).

Likewise, the SCA, 18 U.S.C. 2701 *et seq.*, provides a cause of action against a defendant who "intentionally accesses without authorization a facility through which an electronic communication is provided" or who "intentionally exceeds an authorization to access the facility; and thereby obtains, alters, or prevents unauthorized access to a wire or electronic communication while it was in electronic storage in such system." 18 U.S.C. § 2701(a).  Damages in a civil action under the SCA are "(1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) actual damages or $1,000, whichever is more; and (3) a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. 2707(b).

The Sixth Circuit interprets the "without authorization" element of the CFAA and SCA to mean accessing a computer "without sanction or permission." *Pulte Homes, Inc. v. Laborers' Int'l Union of N.A.*, 648 F.3d 295, 304 (6th Cir. 2011).  Under the CFAA and SCA, "exceeds authorized access" is "access[ing] a computer with authorization and . . . us[ing] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 USC § 1030(e)(6). "Under this definition, 'an individual who is authorized to use a computer for certain purposes but goes beyond those limitations . . . has 'exceed[ed] authorized access.'" *Pulte Homes, Inc. v. Laborers' Int'l Union of N.A.*, 948 F.3d 304 (emphasis in original). "In contrast, 'a person who uses a

computer 'without authorization' has no rights, limited or otherwise, to access the computer in question.'" *Id*. (emphasis in original).

Plaintiffs argue Defendant Mulholland is liable for his violations of the CFAA an SCA and request the Court grant summary judgment in their favor as to Defendant's liability for his violations.  Defendant Mulholland argues he was the "own[er] [of] the Google My Business Account at all relevant times before October 7, 2020[,]" thus, he maintains the Plaintiffs cannot establish he was not authorized to access the account and he seeks summary judgment in his favor as to Plaintiffs' federal claims. ECF No. 56, PageID.703.

Defendant Mulholland's ownership claims are belied by the record before the Court.  While Defendant Mulholland created the Google My Business Account in 2013 when he held a partial ownership interest in the orchard, he did so for the benefit of the Big Red Orchard.  The account was not exclusive to him, as there were multiple authorized users for the Google My Business Account, including "a girl named Bailey Reckling. There was Tim, I can't remember Tim's last name, who we had as a marketing guy. Friend of mine that I used to mountain bike with." ECF No. 55-2, PageID.621-622.

Moreover, on January 1, 2019, Mulholland assigned all of his interest in "Miller's Big Red Orchard, LLC" to Conlan Abu and AONH assigned "all right, title and interest in, to and under the licenses, permits, lease agreements, intangible

assets, purchase orders and contracts relating to [the Big Red Orchard] and any receivables related to the Business" and "all of the Personal Property of the business on the operation of Miller's Big Red Orchard" to Plaintiffs. ECF No. 9-3, PageID.115; ECF No. 55-5, PageID.658.

Indeed, Defendant Mulholland agreed pursuant to the September 1, 2018 Membership Agreement that "Owner and Creditor's entire interest in Miller's" was sold to Plaintiffs as part of the Assignment. ECF No. 55-3, PageID.647. Defendant Mulholland also agreed that AONH had "a certain mortgage and security interest on the real and personal property used" for the Big Red Orchard and that "Owner has consented to releasing any and all rights of redemption in such collateral upon completion of the foreclosure proceedings." *Id*. Accordingly, the Google My Business Account was an asset of the Big Red Orchard, which was purchased by Plaintiffs under the Assignment.

The record also demonstrates that in the fall of 2019, Defendant Mulholland was an employee of the orchard, and no longer held any ownership interests therein. As such, he was given explicit instructions concerning what to post to the Google My Business Account. Specifically, he was directed to "post our hours as open on sundays [sp] please." ECF No. 55-4, PageID.656. The record is devoid of any evidence that Defendant Mulholland was authorized to access the Google My Business Account in any capacity more than a year after his employment was

12

terminated and he was no longer associated with the orchard's business.  See ECF No. 55-5, PageID.661; ECF No. 55-2, PageID.614.  Thus, contrary to Defendant Mulholland's ownership claims, the Google My Business Account was sold to Plaintiffs and Defendant Mulholland consented to that sale.  Defendant Mulholland therefore accessed the Google My Business Account without authorization.

Finally, the record also shows that as a result of Defendant Mulholland's unauthorized access of the My Google Business Account, Plaintiffs suffered damages because they lost customers as a result of the changes and statements Defendant Mulholland made to the account.  Because the Court concludes Defendant Mulholland violated both the CFAA and SCA, it grants summary judgment in favor of Plaintiffs on the issue of Defendant Mulholland's liability under the CFAA and the SCA and denies Defendant's request for partial summary judgment on Plaintiffs' CFAA and SCA claims.

### 3.  Conversion

Under Michigan law, "[c]onversion arises from 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Llewellyn-Jones v. Metro Property Group, LLC*, 22 F.Supp.3d 760, 788 (E.D. Mich. 2014) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.,* 439 Mich. 378, 391 (1992)). "Michigan appellate courts have held that certain intangible property can be the subject of a conversion action." *Sarver v. Detroit*

*Edison Co.,* 225 Mich.App. 580, 586 (1997). *Id*. Statutory conversion occurs when said property is converted for "the other person's own use." MCL 600.2919a(1)(a). Damages for conversion under Michigan law are "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." *Id.*

In *American Furukawa, Inc. v. Hossain*, 103 F.Supp.3d 864, 886 (E.D. Mich. 2015), a court in this district held that Plaintiff "has set forth a proper claim for conversion since [Defendant] took 1,785 files and two-and-half years of emails from Furukawa's exchange server." *Id.* In reaching its decision, the court found that "Michigan appellate courts have held that certain intangible property can be the subject of a conversion action." *Id*. (quoting *Sarver*, 225 Mich.App. 586). The court determined that because the "emails on the server" were "stored inside [Plaintiff's] tangible property," Plaintiff properly plead conversion. *Id*.

Here, the Google My Business Account was the personal property of Plaintiffs. On October 2, 2020, Defendant Mulholland accessed the Google Account and changed the information it contained to harm Plaintiffs' business. By doing so, Defendant Mulholland wrongfully exerted a distinct act of domain over Plaintiffs' personal property which was inconsistent with their rights to the Google My Business Account. *Llewellyn-Jones*, 22 F.Supp.3d 760. Moreover, Defendant Mulholland refused to allow Plaintiffs to have access to the Google My Business Account until October 7, 2020.  There is no genuine issue of material fact in

14

dispute concerning whether Defendant Mulholland, through those actions, wrongfully exerted control over Plaintiffs' personal property–the Google My Business Account–for his own use. Accordingly, Defendant Mulholland is liable for conversion under Michigan law and Plaintiffs are entitled to summary judgment in their favor as to Defendant Mulholland's liability on Plaintiff's conversion claim. As such, the Court denies Defendant Mulholland's motion for partial summary judgment on Plaintiffs' conversion claim.

### 4. Defamation

Pursuant to Michigan law, "[o]ne who publishes defamatory matter concerning a corporation is subject to liability to it (a) if the corporation is one for profit, and the matter *tends to prejudice it in the conduct of its business or to deter others from dealing with it*." *Heritage Optical Center, Inc. v. Levine*, 137 Mich.App. 793, 797; 359 N.W.2d 210 (Mich. Ct. App. 1984) (emphasis in original). Thus "language which casts an aspersion upon [a corporation's] honesty, credit, efficiency or other business character may be actionable." *Id*. at 798. "Where a libel contains an imputation upon a corporation in respect to its business, its ability to do business, and its methods of doing business, the same becomes libelous per se." *Id.* (quotations omitted) (emphasis in original). Thus, a business defamation claim requires the plaintiff to prove

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at

least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Edwards v. Detroit News, Inc*., 322 Mich. App. 1, 12; 910 N.W.2d 394 (2017) (quotation marks and citation omitted). "[T]here is no constitutional protection given to false statements of fact" or statements "provable as false." *Hope-Jackson v. Washington*, 311 Mich.App. 602, 621-22; N.W.2d 736 (2015) (quotation marks omitted). "Even statements couched in terms of opinion may often imply an assertion of objective fact and, thus, can be defamatory." *Ghanam v. Does*, 303 Mich.App. 522, 545; 845 N.W.2d 128 (2014).

Accordingly, "[a] statement that a corporation is no longer in business or is incapable of doing business affects that corporation's business reputation and its ability to do business. Those statements may be the basis for a cause of action for slander per se." *Heritage Optical*, 137 Mich.App. 797. Furthermore, pursuant to MCL 600.2911(1), "uttering or publishing of words imputing the commission of a criminal offense" is defamation per se.

Plaintiffs argue that Defendant Mulholland "clearly defamed [them]." Plaintiffs rely on the fact Defendant Mulholland admitted that he published a statement claiming that Plaintiffs were a "criminal enterprise" which "casts aspersion" on Plaintiffs' "honesty, credit, efficiency or other business character" and which imputes "the commission of a criminal offense" on the Google Account.

16

ECF No. 55, PageID.607.  Defendant Mulholland counters that he relies on truth as a complete defense to Plaintiffs' defamation claim.  Defendant Mulholland maintains he firmly believed that when he made the changes to the Google My Business Account, he was in reality shutting down the account.  He therefore could not have made a false statement about the Plaintiffs.

"In order for a statement to be actionable, the statement must be provable as false." *Mino v Clio School Dist.,* 255 Mich App 60, 77 (2003). Therefore, "[t]ruth is an absolute defense to a defamation claim." *Wilson v Sparrow Health Systems,* 290 Mich App 149, 155 (2010). It is not necessary for a defendant to prove that a publication is literally and absolutely accurate in every minute detail. Rather, substantial truth is an absolute defense to a defamation claim. *Collins v Detroit Free Press, Inc.,* 245 Mich App 27, 33 (2001). Michigan courts have held that slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance. *Id.* It is sufficient for the defendant to justify so much of the defamatory matter as constitutes the sting of the charge. *Id.*

Defendant Mulholland relies on the testimony of Mr. Moore and one of his employees, who both testified that the farm was growing marijuana without a license to do so, which is a violation of federal law.  Mr. Moore also testified that the marijuana was his and that he gave some away, tested some of it, and then destroyed a great deal of it.

Defendant Mulholland also relies on his own deposition testimony wherein he explains that the changes to the Google account were made in an attempt to shut down the google account.  Defendant Mulholland testified that he was under the impression that he was shutting down the account, and that the description of the business as a "criminal enterprise" was for his own internal records. Defendant Mulholland believed that when he wrote on the Google My Business Account that the business was permanently closed, he believed he was closing his Google listing and the changes made to the Google account were solely seen on his end. Yet, Defendant Mulholland admitted he understood that "the basic premise of Google" was so that "people in the public can do a search and pull up information on a Google listing about a business" and testified he "understood this was going to be part of the Google listing for the business." *Id.,* PageID.634-635.

Based on this testimony, the Court concludes questions of material fact remain as to whether Defendant Mulholland can establish his truth defense. *See Hodgins Kennels, Inc. v. Durbin*, 170 Mich. App. 474, 482; 429 N.W.2d 189 (1988), rev'd on the grounds, 432 Mich. 894, 438 N.W.2d 247 (1989) (explaining that "the truth of and good motive behind an allegedly libelous statement are matters for jury determination.").  Plaintiffs are not entitled to summary judgment in their favor as to liability on their defamation claim.

18

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, Plaintiffs' Motion for

Summary Judgment [#55] is GRANTED IN PART AND DENIED IN PART.

Defendant's Motion for Summary Judgment [#56] is DENIED.

Plaintiffs' Motion to Strike and for Sanctions [#58] is DENIED.

Defendant's Motion for Leave to File Motion for Summary Judgment [#57]

is GRANTED.

SO ORDERED.

Dated:  June 27, 2023                         /s/Gershwin A. Drain
                                              GERSHWIN A. DRAIN
                                              United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 27, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk